UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODOLFO ESPINOZA and GAUDALUPE PORTILLO, PARENTS OF DECEDENT MARIA CELESTE ESPINOZA-PORTILLO<br><br>Plaintiffs,<br><br>v.<br><br>RAUDEL MORENO and MARICELA MORENO and DOES 1 to 100 inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | 1:08-CV-00931-OWW/SMS<br><br>ORDER RE UNITED STATES' MOTION FOR DETERMINATION OF GOOD FAITH AND MOTION TO DISMISS BASED UPON GOOD FAITH SETTLEMENT |

## I. INTRODUCTION

This case entails a settlement reached between the United States Postal Service ("Postal Service") and the parents of Maria Celeste Espinoza-Portillo, a four-year-old girl who was hit and killed by a Postal Service vehicle. After the parents settled with the Postal Service, the parents filed a lawsuit in state court against their neighbors, Raudel Moreno and Maricela Moreno, claiming that the Morenos negligently supervised Maria who was playing at the Morenos' house moments before the accident. The Morenos filed a cross-complaint in state court against the Postal Service asserting causes of action for "comparative indemnification" and "implied equitable indemnification." The United States then removed the case to federal court.

**Before the court is a motion by the United States for an order determining good faith settlement, and a motion to dismiss the cross-complaint based upon good faith settlement or alternatively, a motion for summary judgment. The following background facts, which no party disputes, are taken from the materials submitted in connection with the motion.**

**II. BACKGROUND**

**On April 10, 2006, the United States received a wrongful death claim from Roldolfo Espinoza and Gaudalupe Portillo (collectively "plaintiffs" or "claimants") alleging that the negligence of a Postal Service driver, who was delivering mail to their home, caused the death of their daughter, Maria. (Doc. 4 at 3.) The Postal Service's National Tort Center handled the claim pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. On the claim form they submitted, the claimants, through their attorney, demanded three million dollars in damages for Maria's wrongful death. (Doc. 4, Ex. 1.) Attorney Joseph R. Doyle negotiated the claim on behalf of the Postal Service. (Doc. 4, Doyle Decl. ¶ 3.)**

**Prior to negotiations with claimants' counsel, Doyle learned of a Traffic Collision Report ("Report") prepared by an officer at the scene of the accident. (Doc. 4, Ex. 3, Doyle Decl. ¶ 6.) The Report concludes that Maria caused the collision by running across the street and into the vehicle's path. (Doc. 4, Ex. 3 at 13.) The Report contains various statements from individuals at the scene, including Maria's mother, Ms. Moreno, and a purported eye witness, Ismael Cruz. The Report contains the following statement from Cruz:**

**I WAS WALKING NORTH IN THE STREET AND I WAS ON MY WAY TO**

> PLAY WITH HER [MARIA'S] BROTHERS. I SAW THE MAIL MAN STOPPED AT THE MAIL BOX. I SAW HER [MARIA] COME OUT OF THE SMALL GATE FROM THE HOUSE ON THE RIGHT AND SHE RAN ACROSS THE STREET AND IN FRONT OF THE MAIL TRUCK. I THINK SHE WAS TRYING TO GET TO THE MAIL BOX TO GET THE MAIL. THE MAIL MAN DROVE FORWARD AND RAN OVER HER. I SAW HER PUT HER HANDS STRAIGHT AS IF TRYING TO STOP THE TRUCK BUT IT HAPPENED TO (SIC) QUICK AND I THINK THE TIRES RAN OVER HER. I WENT TO THE MAIL MAN AFTER IT HAPPENED AND I TOLD HIM THAT I THOUGHT IT WASN'T HIS FAULT BECAUSE SHE CAME OUT OF NOWHERE.

(Doc. 4, Ex. 3 at 10.) In light of the Report, during negotiations with the claimants, the United States took the position that it was not responsible for the accident. (Doc. 4, Doyle Decl. ¶ 11.) During the pendency of negotiations, Doyle learned that the claimants intended to pursue a separate claim against the Morenos on the theory that they negligently supervised Maria on the day of the accident. (Doc. 4, Doyle Decl. ¶ 10.) According to a statement in the Report attributed to Ms. Portillo, she walked her daughter Maria across the street and stood on the sidewalk while Maria entered the Morenos' yard and began playing. (Doc. 4, Ex. 3 at 11.) Ms. Portillo saw Ms. Moreno and they acknowledged each other - Ms. Portillo had left her daughter at the Morenos before. (*Id.*) Thereafter, Ms. Portillo walked across the street, engaged in some yard work in the front of her home and then walked into her backyard to cut some branches. (*Id.*) Approximately forty minutes later, her son came and informed her of the accident. (*Id.*)

Ultimately, in July 2007, the claimants settled with the Postal Service for $270,000. (Doc. 4, Doyle Decl. ¶ 4, Ex. 2.) The parties, including the claimants attorney, executed a settlement agreement (entitled "Stipulation For Compromise Settlement And Release Of Federal Tort Claims Act Claims Pursuant To 28 U.S.C. § 2672"), a copy of which the United States has provided in support

of its motion. (Doc. 4, Ex. 2.) Following approval by the Department of Justice, the Postal Service tendered payment to claimants and their attorney in one check for the full settlement amount. (Doc. 4, Doyle Decl. ¶ 13, Ex. 4.) Given the informal nature of negotiations, claimants were not required to participate in formal discovery or prove negligence on the part of the postal carrier.

In January 2008, approximately six months after they reached a settlement with the Postal Service, Maria's parents filed an action in state court against their neighbors, the Morenos, on the theory that they "negligently and recklessly failed to provide proper supervision to [the] decedent minor." (Doc. 8, Ex. A at 3.) The Morenos then filed a cross-complaint against the Postal Service for indemnity (Doc. 8, Ex. B.), and thereafter the United States removed the action to federal court and filed the instant motion.

During the pendency of the motion, counsel for the United States communicated with counsel for Maria's parents, Fernando F. Chavez, and learned that on April 30, 2007, they made a written demand on the Morenos' insurance company to settle the negligent supervision claim for $300,000, the policy limits. The United States included a copy of this written demand in its reply brief. (Doc. 10, Lodge Decl., Ex. 1.) Through its motion, the United States requests a finding that the Postal Service's settlement was made in "good faith."

III. STANDARD

No party disputes that the substantive law of California

**applies to this motion.[1] California Code of Civil Procedure § 877 and § 877.6(c) address how a "good faith" settlement impacts the liability of the tortfeasors involved. As provided by § 877:**

> **Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:**
>
> **(a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.**
>
> **(b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.**

**Under § 877.6(c), if a "settlement was made in good faith [it] shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable**

---

**[1] The Morenos' action against the Postal Service asserts state-law claims for indemnity, and state substantive law generally applies to state-law claims. *Slaven v. BP Am., Inc.*, 958 F. Supp. 1472, 1477 (C.D. Cal. 1997). The underlying settlement between the Postal Service and the claimants dealt with the resolution of a claim under the Federal Tort Claims Act ("FTCA"). Under the FTCA, claims are governed by the substantive law of the state in which the "act or omission occurred," *Delta Savings Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001), and the substantive law of that situs "applies not only as to the creation of liability but also as to release from liability," *Air Transport Associates v. United States*, 221 F.2d 467, 471 (9th Cir. 1955). Here, the alleged act or omission occurred in California. The substantive law of California applies. *See also Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1466 (9th Cir. 1983) (applying California law to determine whether a settlement was reached in good faith between parties in an FTCA case that arose out of an airplane crash in California).**

**comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." The equitable policies behind section 877 and 877.6 include "both the encouragement of settlements and the equitable allocation of costs among multiple tortfeasors."** ***Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*****, 38 Cal. 3d 488, 498-99 (1985).[2]**

**"A good faith determination may be made in the tort action in which the settlement is reached . . . or in a subsequently filed indemnity action."** ***Nutrition Now, Inc. v. Superior Court*****, 105 Cal. App. 4th 209, 212-13 (2003);** ***see also Spectra-Physics, Inc. v. Chase Manhattan Bank, N.A.*****, 654 F. Supp. 311, 313 (N.D. Cal. 1987). In** ***Tech-Bilt*****, the California Supreme Court articulated several factors for a court to consider when determining if a settlement was made in good faith. The factors include: (1) a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after trial; (5) the financial conditions and insurance policy limits of settling defendants; and (6) the existence of collusion, fraud or tortious conduct aimed to injure nonsettling defendants' interests. 38 Cal. 3d at 499. The California Supreme Court explained:**

---

**[2] California Code of Civil Procedure section 877 and 877.6(c) are substantive rules of California law. Thus, they apply in this case.** ***Fed. Sav. & Loan Ins. Corp. v. Butler*****, 904 F.2d 505, 511 & n.6 (9th Cir. 1990);** ***City of Grand Terrace v. Superior Court*****, 192 Cal. App. 3d 1251, 1261 (1987).**

> The party asserting the lack of good faith, who has the burden of proof on that issue, should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a 'settlement made in good faith' within the terms of section 877.6.

*Id.* at 499-500 (citation omitted). In making a determination of good faith, "practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement." *Id.* at 499. *Tech-Bilt* advises that courts should be mindful not to convert the "procedure into a full-scale minitrial," as this would unduly discourage settlements. *Id.*

A finding of good faith is a finding of fact, which is reversible "only upon a showing that it was clearly erroneous because of lack of evidentiary support or erroneous application of law." *Slottow v. Am. Cas. Co. of Reading, Pa.*, 10 F.3d 1355, 1359 (9th Cir. 1993) (quotation marks omitted). "A good faith determination under . . . § 877.6 is both fact-sensitive and discretionary." *Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1504 (9th Cir. 1994).

## IV. DISCUSSION AND ANALYSIS

The United States takes the position that its settlement with plaintiffs was in good faith and, therefore, bars the Morenos' cross-complaint for indemnity. The Morenos contend, however, that the evidence is insufficient to support a finding that the settlement was within the "ballpark" of the reasonable range.

Some of the *Tech-Bilt* factors are not at issue in this motion. There is no indication in the record, or argument by the Morenos, that, in connection with the settlement, plaintiffs and the United

**States engaged in collusion, fraud or tortious conduct aimed to injure the Morenos. There is no evidence to suggest that the settlement was anything other than an arm's-length agreement reached between opposing parties who were both represented by counsel. There is also no dispute that the amount paid in the settlement between the United States and plaintiffs was, in fact, $270,000. There is a dispute, however, as to whether this amount represents a rough approximation of the settlor's (i.e., the Postal Service's) proportionate share of liability.**

**A. Rough Approximation Of Plaintiffs' Total Recovery**

**Under *Tech-Bilt*, good faith, or the lack thereof, depends upon "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." 38 Cal. 3d at 499. To make this proportional assessment a logical starting point, as *Tech-Bilt* dictates, is a rough approximation of the plaintiff's *total* possible recovery, i.e., the value of the underlying claim in the aggregate. As discussed more fully below, the evidence on this issue is currently insufficient.**

**The parties disagree as to what constitutes a rough approximation of plaintiffs' total possible recovery. The Morenos contend that plaintiffs' initial demand on the Postal Service of three million dollars provides the best benchmark. A plaintiff's request for damages, however, is not determinative. *Horton v. Superior Court*, 194 Cal. App. 3d 727, 735 (1987). "[T]he judge does not look to the plaintiff's claim for damages; rather the judge tries to determine a rough approximation of what the plaintiff**

**would actually recover if the case should go to trial." *Id.* (quotation marks omitted). The Morenos implicitly recognize that three million dollars is an exaggerated figure by stating, in footnote one of their opposition brief, that they "do not concede that the actual value of the case is in fact" three million dollars. (Doc. 7 at 9.)**

**The United States argues that a more reasonable "rough approximation" of the total possible recovery is somewhere in the range of $570,000, which is the sum of plaintiffs' settlement amount with the Postal Service ($270,000), and plaintiffs' settlement demand on the Morenos' insurance company ($300,000). Plaintiffs tendered their demand letter on the Morenos' insurance company, a demand based on a purported "preliminary investigation," at least two months before they executed their settlement with the United States.[3] The demand is conclusory, only five sentences long, bereft of any analysis or explanation as to how the $300,000 figure was computed or what valuation criteria were utilized, and obviously constrained by the policy limits. For these reasons, the $300,000 figure is not particularly illuminating. Because neither $570,000 nor three million dollars represents an evidently reliable approximation of plaintiffs' total possible recovery, some other figure must be utilized.**

**There are several evidentiary methods that litigants can use**

---

**[3] At the hearing on this motion, the Morenos argued that the demand on their insurance company occurred after the settlement between plaintiffs and the United States. Plaintiffs, their attorney and Doyle all signed the settlement in July 2007. The demand letter to the Morenos' insurance company, however, is dated a few months *prior*: April 30, 2007.**

**to provide the court with, or assist the court in making, a principled approximation of plaintiff's total possible recovery or the value of the underlying claim. In *Nutrition Now*, the court indicated that a declaration (or testimony) from an expert who is familiar with pertinent valuation criteria, such as "valuation criteria recognized by the California personal injury bar, insurance claims departments, [or California] trial courts," can provide a rough value of the underlying claim. 105 Cal. App. 4th at 213; *see also Tech-Bilt*, 38 Cal. 3d at 500 ("Despite the uncertainties, generalized valuation criteria are recognized by the personal injury bar, insurance claims departments and pretrial settlement courts."). Similarly, a declaration (or testimony) from an experienced "settlement negotiator[]," *Tech-Bilt*, 38 Cal. 3d at 500, which can be an attorney for one of the settling parties, who has previously valued and negotiated claims, can also provide a rough value of the underlying claim (so long as the declaration or testimony is not unduly conclusory and reveals the basis upon which the valuation is grounded). Whatever method is utilized, in a contested case, the information provided must be sufficient to reasonably place a value on the underlying claim so the court can conduct a *Tech-Bilt* analysis. *West v. Superior Court,* 27 Cal. App. 4th 1625, 1636 (1994) (vacating the trial's court determination of a good faith settlement, noting "the court is called upon to make a 'rough approximation' of what the plaintiff would actually recover. Here, however, there is no evidence the court made such an approximation, or that the 'value' of the suit formed a basis for the court's ruling"). As noted in *City of Grand Terrace v. Superior Court*, 192 Cal. App. 3d 1251, 1263 (1987):**

> **Because *Tech-Bilt* mandates a rough approximation of the settling defendant's proportionate liability and consideration of all other defendants' proportionate liability and consideration of all other factors that might affect the fairness of the settlement as respects nonsettling defendants, *the affidavits, declarations or other evidence should provide the court with the facts necessary to evaluate the settlement in terms of the factors contemplated by Tech-Bilt. Without the facts, in a contested hearing, it is impossible for a court to exercise its discretion in an appropriate fashion.***

**(Emphasis added.) A similar concern for a sufficient evidentiary basis was echoed in *Mattco Forge, Inc. v. Arthur Young & Co*, 38 Cal. App. 4th 1337, 1350 (1995).[4]**

**At the hearing on this motion, the court asked for a reasonable estimation of the value of plaintiffs' wrongful death claim. The United States, apparently without any valuation criteria at hand, had to speculate on this issue. Absent a reasonably reliable approximation of the value of the underlying claim, "it is impossible" to conduct a *Tech-Bilt* analysis at this time. *City of Grand Terrace*, 192 Cal. App. 3d at 1263. It is true, as noted by the United States, that the Morenos have the burden of establishing that the settlement was not made in good faith. It is equally true, however, that a court cannot make a good faith determination without the requisite information; and because the Morenos attacked the motion and demonstrated a lack of information sufficient to make a good faith determination, at this juncture, without more, the settlement cannot be deemed as one made in good faith.**

---

**[4] The Ninth Circuit has stated that a "lack of evidentiary support" for a finding of good faith is a basis for reversal. *Slottow*, 10 F.3d at 1359 (quotation marks omitted).**

## V. CONCLUSION

Given that the Morenos contested the motion and in light of the current state of the evidentiary record, the motion cannot be finally decided. As the moving party, the United States is given thirty calendar days from the date of this order to supplement its evidentiary materials to enable the court to make a rough approximation of the value of plaintiffs' wrongful death claim.[5] In the absence of any supplementation within this time period, the motion will be denied without prejudice to refiling.[6]

IT IS SO ORDERED.

**Dated: December 15, 2008**

**/s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE

---

[5] The United States, along with its supplementation, and the Morenos, in opposition thereto, may submit additional evidence on other *Tech-Bilt* factors and attendant briefing.

[6] Given the ruling on this motion there is no occasion to consider whether the settlement reflected a rough approximation of the Postal Service's proportionate share of liability (as the total possible recovery in the aggregate, the threshold issue, remains unclear). In regards to the proportionate share of liability, the Report is the main evidence offered by the United States on this issue. The Morenos object to the usage of the Report and claim that it is inadmissible evidence citing California authorities. They argue that the Report contains inadmissible opinions of the officer who drafted the Report and inadmissible hearsay statements from others. The United States argues the report is admissible under the Federal Rules of Evidence. No party discusses or analyzes whether California or federal evidentiary rules apply to the consideration of the Report. Once again, in light of the ruling, at this juncture, there is no occasion to consider this issue.