UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RODOLFO ESPINOZA and GAUDALUPE PORTILLO, PARENTS OF DECEDENT MARIA CELESTE ESPINOZA-PORTILLO**<br><br>Plaintiffs,<br><br>v.<br><br>**RAUDEL MORENO and MARICELA MORENO and DOES 1 to 100 inclusive,**<br><br>Defendants.<br><br>**AND RELATED CROSS-ACTIONS** | 1:08-CV-00931-OWW-SMS<br><br>ORDER TO SHOW CAUSE RE: DISMISSAL |

## I. INTRODUCTION

Before the court is a motion by the United States to determine a good faith settlement and to dismiss the cross-complaint of Raudel and Maricela Moreno based upon a good faith settlement.[1]  After oral argument on this motion, an order issued requiring supplemental briefing (Doc. 13) which the parties have filed.

This case entails a settlement reached between the United States Postal Service ("Postal Service") and the parents of Maria Celeste Espinoza-Portillo, a four-year-old girl who was hit and killed by a Postal Service vehicle.  After the parents settled with the Postal Service, the parents filed a wrongful death lawsuit in San Joaquin Superior Court against their neighbors, Raudel and Maricela Moreno, claiming that the Morenos negligently supervised Maria who was playing at the Morenos's house moments before the accident.  The Morenos filed a cross-complaint in state court against the Postal Service asserting causes

---

[1] As stated in the moving papers, counsel for the United States is also representing the United States Postal Service.

1

of action for "comparative indemnification" and "implied equitable indemnity." (Doc. 1, Ex. A.) The action was then removed to federal court.

The following background facts are taken from the materials submitted in connection with the motion and other documents on file in this case.

## II. BACKGROUND

On April 10, 2006, the United States received a wrongful death claim from Roldolfo Espinoza and Gaudalupe Portillo (collectively "plaintiffs" or "claimants") alleging that the negligence of a Postal Service driver, who was delivering mail to their home, caused the death of their daughter, Maria. (Doc. 4-2 at 3.) The Postal Service's National Tort Center handled the claim pursuant to the Federal Tort Claims Act ("FTCA"). On the claim form they submitted, the claimants, through their attorney, demanded three million dollars in damages for Maria's wrongful death. (Doc. 4-3, Ex. 1.)

Attorney Joseph R. Doyle negotiated the claim on behalf of the Postal Service. (Doc. 4-3 at ¶ 3.) Annually, Doyle is responsible for the adjudication and negotiation of hundreds of federal torts claims and lawsuits. (Doc. 15-2 at ¶ 2.) Doyle has worked on numerous wrongful death claims, some of which have involved minor children run over by Postal Service vehicles. (*Id.*)

Prior to negotiations with claimants' counsel, Doyle learned of a Traffic Collision Report ("Report") prepared by an officer at the scene of the accident, E. Martinez. (Doc. 4-3 at ¶ 6, Ex. 3.) The Report concludes that Maria caused the collision by running across the street and into the vehicle's path. (Doc. 4-3, Ex. 3 at 13.) The Report contains various statements from individuals at the scene including the driver (Louis Kegyes), a purported eye witness (Ismael Cruz), Maria's mother, and Ms. Moreno.

According to the driver, Kegyes, after delivering mail at the claimants address, he looked forward, checked his mirrors, and observed that it was clear. He then proceeded forward and felt that he ran over something. He got out of the vehicle, saw Maria in front of his right rear wheel, and used his cellular phone to call for help. According to the driver, he never saw Maria prior to the accident. (Doc. 4-3, Ex. 3 at 10.)

The Report also contains the following statement from Cruz:

I WAS WALKING NORTH IN THE STREET AND I WAS ON MY WAY TO PLAY WITH HER [MARIA'S] BROTHERS. I SAW THE MAIL MAN STOPPED AT THE MAIL BOX. I SAW HER [MARIA] COME OUT OF THE SMALL GATE FROM THE HOUSE ON THE RIGHT AND SHE RAN ACROSS THE STREET AND IN FRONT OF THE MAIL TRUCK. I THINK SHE WAS TRYING TO GET TO THE MAIL BOX TO GET THE MAIL. THE MAIL MAN DROVE FORWARD AND RAN OVER HER. I SAW HER PUT HER HANDS STRAIGHT AS IF TRYING TO STOP THE TRUCK BUT IT HAPPENED TO (SIC) QUICK AND I THINK THE TIRES RAN OVER HER. I WENT TO THE MAIL MAN AFTER IT HAPPENED AND I TOLD HIM THAT I THOUGHT IT WASN'T HIS FAULT BECAUSE SHE CAME OUT OF NOWHERE.

(Doc. 4-3, Ex. 3 at 10.)

According to a statement in the Report attributed to Ms. Portillo, prior to the accident, Ms. Portillo walked her daughter Maria across the street and stood on the sidewalk while Maria entered the Morenos's yard and began playing. Ms. Portillo saw Ms. Moreno and they acknowledged each other – Ms. Portillo had left her daughter at the Morenos's house before. Thereafter, Ms. Portillo walked across the street, engaged in some yard work in the front of her home and then walked into her backyard to cut some branches. Approximately forty minutes later, her son came and informed her of the accident. (Doc. 4-3, Ex. 3 at 11.)

According to a statement in the Report attributed to Ms. Moreno, Ms. Portillo brought "her [Maria] over to play with my children" and Maria "had been here for about two hours and I [Ms. Moreno] had to enter my home to change my infant child. In that moment is when she [Maria] went out of the yard and the accident happened." Ms. Moreno acknowledged that Maria had "a habit of running back and forth across the street." (Doc. 4-3, Ex. 3 at 10.)

The Report also contains observations by officer Martinez, the officer who prepared the Report. When Martinez arrived on the scene, the Postal Service vehicle remained unmoved and faced south on Thelma Avenue. Martinez noted rub marks on the vehicle's right front bumper and its undercarriage, and a pool of blood on the west dirt shoulder. Martinez prepared a diagram of Maria's path across the street which ends in front of the Postal Service vehicle and starts from the Moreno's yard, situated to the left, rear of the driver. (Doc. 4-3, Ex. 3 at 4, 8-9, 13.)

1    In light of the Report, during negotiations with the claimants, the Postal Service took
2 the position that it was not responsible for the accident. (Doc. 4-3 at ¶ 11.)  During the
3 pendency of negotiations, Doyle learned that the claimants intended to pursue a separate
4 claim against the Morenos on the theory that they negligently supervised Maria on the day
5 of the accident. (Doc. 4-3 at ¶ 10.)  Ultimately, in July 2007, the claimants settled with the
6 Postal Service for $270,000. (Doc. 4-3 at ¶ 4, Ex. 2.)  The parties, including the claimants'
7 attorney, executed a settlement agreement (entitled "Stipulation For Compromise Settlement
8 And Release Of Federal Tort Claims Act Claims Pursuant To 28 U.S.C. § 2672"), a copy of
9 which the United States has provided in support of its motion. (Doc. 4-3, Ex. 2.)  Following
10 approval by the Department of Justice, the Postal Service tendered payment to the claimants
11 and their attorney in one check for the full settlement amount. (Doc. 4-3 at ¶ 13, Ex. 4.)
12 Given the informal nature of negotiations, the claimants were not required to participate in
13 formal discovery or prove negligence on the part of the driver.
14    In January 2008, approximately six months after they reached a settlement with the
15 Postal Service, Maria's parents filed an action in state court against their neighbors, the
16 Morenos, on the theory that they "negligently and recklessly failed to provide proper
17 supervision to [the] decedent minor." (Doc. 8, Ex. A at 3.)  The Morenos then filed a
18 cross-complaint against the Postal Service for indemnity.  The Postal Service removed the
19 action to federal court and the present motion was filed.
20    During the pendency of the motion, counsel for the United States communicated with
21 counsel for Maria's parents, Fernando F. Chavez, and learned that they made a written
22 demand on the Morenos's insurance company to settle the negligent supervision claim for
23 $300,000, the policy limits.  The United States included a copy of this written demand in its
24 briefing. (Doc. 10-3, Ex. 1.)  Through its motion, the United States requests a finding that
25 the Postal Service's settlement was made in "good faith."  *See Tech-Bilt, Inc. v. Woodward-*
26 *Clyde & Assocs.*, 38 Cal. 3d 488 (Cal. 1985).

### III.  JURISDICTION

28    Before turning to the merits of the motion, a review of subject matter jurisdiction is

**4**

warranted. A "district court ha[s] a duty to establish subject matter jurisdiction over the removed action *sua sponte*, whether the parties raised the issue or not." *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004). In conducting this *sua sponte* review, a jurisdictional defect has appeared. Coincidentally, this particular jurisdictional defect has been noted by the United States/Postal Service in similar cases and used successfully to obtain dismissals for lack of subject matter jurisdiction. *See Scoratow v. Smith*, No. 02-08-cv-1576, 2009 WL 890575 (W.D. Pa. Mar. 27, 2009) (postal driver negligence/indemnity case); *Shnetman v. 200 White Plains Road*, *LLC*, No. 06 Civ. 3819(LMM), 2006 WL 3016312 (S.D.N.Y. Oct. 20, 2006) (same); *Charles v. Inam*, No. 99Civ.12427(SWK), 2001 WL 79900 (S.D.N.Y. Jan. 30, 2001) (same).

In its notice of removal, the Postal Service cited several statues including, among others, 28 U.S.C. § 1442 and the FTCA, 28 U.S.C § 1346 and § 2679(b), in support of its removal.

A.   Removal Under § 1442

Among other things, § 1442(a)(1) provides that a "civil action . . . commenced in a State court against . . . [t]he United States or any agency thereof" "may be removed by them" to a United States district court where the action is pending. This section "expressly allow[s] for removal by federal agencies" and the United States, *Nebraska ex rel. Department of Social Services v. Bentson*, 146 F.3d 676, 678 (9th Cir. 1998), even without the consent of other defendants, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006), and has been interpreted quite broadly. Section 1442(a)(1) permits removal of the "*entire* case, not merely the portion affecting" the removing party. *California v. NRG Energy Inc.*, 391 F.3d 1011, 1023 (9th Cir. 2004), *rev'd on other grounds*, *Powerex Corp. v. Reliant Engery Servs., Inc.*, 551 U.S. 224 (2007). In addition, the fact that the removing party "is a third-party defendant does not defeat removal under section 1442(a)(1)." *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984); *see also In re Nat'l Sec. Agency Telecomms. Records Litig.*, 483 F. Supp. 2d 934, 946 (N.D. Cal. 2007).

The Postal Service is "an independent establishment of the executive branch of the

Government of the United States," *Dolan v. United States Postal Service*, 546 U.S. 481, 483-84 (2006) (internal quotation marks omitted), and, consistent with this status, it can invoke § 1442(a)(1). Even though only one portion of the case involves the Postal Service, and even though the Postal Service is a third-party defendant, removal of the entire case is justified under § 1442(a)(1). This section, however, merely permits an appropriate defendant "to remov[e] a case to federal district court, it does not determine whether the court has jurisdiction to hear it." *State Eng'r v. S. Fork Band of Te-Moak Tribe*, 339 F.3d 804, 809 (9th Cir. 2003).

B.   Subject Matter Jurisdiction

"[F]or suits against a federal agency based on claims which are 'cognizable' under 28 U.S.C. § 1346(b)," the FTCA provides the "exclusive avenue for pursuing those claims." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1254 (9th Cir. 1997) (citing 28 U.S.C. § 2679(a)). In addition, the Postal Reorganization Act ("PRA"), 39 U.S.C. § 101 *et seq.*, provides that the FTCA applies to "tort claims arising out of activities of the Postal Service." § 409(c); *see also Dolan*, 546 U.S. at 484; *MB Fin. Group, Inc. v. U.S. Postal Serv.*, 545 F.3d 814, 816 (9th Cir. 2008).[2] The FTCA gives federal district courts

> **exclusive** jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). As to claims falling within this federal jurisdictional grant, the FTCA makes the government liable "in the same manner and to the same extent as a private individual under like circumstances." § 2674; *see also Dolan,* 546 U.S. at 485. "Both provisions," § 1346(b)(1) and § 2674, "direct the courts to analogize the

---

[2] In full, § 409(c) reads: "[t]he provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service."

6

government to a private actor in a similar situation and apply state law to determine amenability to suit and substantive liability." *LaBarge v. Mariposa County*, 798 F.2d 364, 366 (1986). This principle applies to indemnity claims against the government. *Id*.[3]

Under the law of California, which is where the accident occurred, the United States/Postal Service, if it were a private person, would be amendable to suit and potentially liable for indemnity. "As part of the comparative equitable indemnity doctrine, a defendant who is sued has a right to bring in other tortfeasors who are allegedly responsible for plaintiff's action through a cross-complaint or by a separate complaint for equitable indemnification." *Gem Developers v. Hallcraft Homes of S.D., Inc*., 213 Cal. App. 3d 419, 428 (1989). To invoke the doctrine, "there must be some basis for tort liability against the proposed indemnitor." *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr*., *Inc*., 119 Cal. App. 4th 848, 852 (2004). "Generally, it is based on a duty owed to the underlying plaintiff, although vicarious liability and strict liability also may sustain application of equitable indemnity." *Id*. The equitable indemnity doctrine applies not only in traditional "joint" tortfeasor situations, but also where there are "concurrent, and successive tortfeasors whose actions combine to cause the plaintiff's injury." *Newhall Land & Farming Co. v. McCarthy Constr*., 88 Cal. App. 4th 769, 773 (2001).

Because, under the law of California, the United States/Postal Service, if it were a private person, would be amendable to suit and potentially liable for indemnity for its portion of damages arising from Maria's alleged wrongful death, the indemnity action falls within the ambit of § 1346(b)(1). This section would often suffice to confer subject matter jurisdiction. Here, however, the word "exclusive" in § 1346(b)(1) and the fact that this action was removed create a jurisdictional issue.

For actions, like the one here, that fall with the scope of § 1346(b)(1), federal district courts have "exclusive" jurisdiction. This exclusive jurisdiction creates a problem when it

---

[3] The FTCA has long been interpreted to cover indemnity claims. *See Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 198 (1983).

**7**

comes to removal. Under the derivative jurisdiction doctrine, "[i]f the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none" upon removal. *Lambert Run Coal Co. v. Balt. & Ohio R.R. Co.*, 258 U.S. 377, 382 (1922). This doctrine is still viable and continues to be applied by courts in this circuit, *see, e.g., In re Elko County Grand Jury*, 109 F.3d 554, 555 (9th Cir. 1997); *Glass v. Nat'l R.R. Passenger Corp.*, 570 F. Supp. 2d 1180, 1182-83 (C.D. Cal. 2008), and in others, *see, e.g.*, *Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 244-46 (4th Cir. 2007). It is this doctrine which the United States/Postal Service has successfully invoked in similar cases to obtain dismissal for lack of jurisdiction. *See Scoratow*, 2009 WL 890575 at *3 (concluding that "because the state court lacked subject matter jurisdiction over Smith's claims against the United States/United States Postal Service, this Court simply did not acquire jurisdiction upon removal"); *Shnetman*, 2006 WL 3016312 at *2 (granting dismissal "of the third-party complaint for lack of subject matter jurisdiction" because of the derivative jurisdiction doctrine); *Charles*, 2001 WL 79900 at *1-2 (concluding that the court lacked "subject matter jurisdiction over the claims in the third-party complaint" and granting dismissal because of the derivative jurisdiction doctrine).

Applying the doctrine here, because the Morenos's indemnity action falls within the exclusive federal jurisdiction conferred by § 1346(b)(1), the San Joaquin Superior Court never had jurisdiction over it.[4] *See Scoratow*, 2009 WL 890575 at *2; *Shnetman*, 2006 WL 3016312 at *1; *Charles*, 2001 WL 79900 at *1; *see also Glass*, 570 F. Supp. 2d at 1182. Accordingly, there is no jurisdiction over the indemnity action here and it is subject to dismissal. There is, however, more to the jurisdictional inquiry.

While the derivative jurisdiction doctrine remains viable in many cases, the doctrine does *not* apply to cases removed under § 1441. This is because § 1441(f) specifically

---

[4] Given the applicability of the FTCA and its conferral of exclusive jurisdiction in federal courts, the Postal Service could have filed a motion to dismiss the indemnity action in state court for lack of subject matter jurisdiction.

precludes the application of the derivative jurisdiction doctrine in such cases:

> The court to which a civil action is removed *under this section* is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

28 U.S.C. § 1441(f) (emphasis added). In its notice of removal, in addition to citing § 1442, the Postal Service also cited "§ 1441" as supporting removal. At first glance, this would seem to remedy the jurisdictional problem created by the derivative jurisdiction doctrine. The Postal Service, however, is a third-party defendant in the state-court action. Although there is no Ninth Circuit precedent on this issue, district courts in the Ninth Circuit have overwhelmingly concluded that a third-party defendant cannot remove under § 1441. *See Foster Poultry Farms, Inc. v. Int'l Bus. Machs. Corp.*, No. CIV-F-06-0680 AWI SMS, 2006 WL 2769944, at *3 (E.D. Cal. Aug. 1, 2006) ("[T]he great weight of district court authority within this circuit indicates that third-party defendants lack" the right to remove under § 1441); *United Collection Serv., Inc. v. Donaldson*, No. C06-545JLR, 2006 WL 1307899, at *1 (W.D. Wash. May 9, 2006); *Ciolino v. Ryan*, No. C03-1396 THE, 2003 WL 21556959, *3-6 (N.D. Cal. July 9, 2003). In line with this authority, the Postal Service had no power to remove under § 1441. Because § 1441 cannot be invoked and is inapplicable, the jurisdictional defect under the derivative jurisdiction doctrine remains. While the Postal Service cited another statute in its notice of removal ("§ 1339"), this provision, like the rest, fails to cure the jurisdictional defect.

## IV.  CONCLUSION

Because it appears the court lacks subject matter jurisdiction, the United States/Postal Service is ordered to show cause, in writing, by October 13, 2009, why the indemnity action should not be dismissed for lack of jurisdiction and the remainder of the action remanded. Any opposition is due by October 20, 2009; and any reply is due by October 27, 2009.

The motion to determine a good faith settlement and to dismiss the cross-complaint of Raudel and Maricela Moreno based upon a good faith settlement (Doc. 4) is denied pending resolution of the jurisdictional issue. If the United States/Postal Service can

demonstrate that jurisdiction exists, a memorandum decision addressing the merits of the motion will issue shortly thereafter.  If not, this case cannot proceed in federal court.

IT IS SO ORDERED.

**Dated:   September 30, 2009**              /s/ Oliver W. Wanger
                                             UNITED STATES DISTRICT JUDGE